UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KRISTINA LUKING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-01524 JAR |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Kristina Luking's ("Luking") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

**I.    Background**

Luking applied for supplemental security income benefits on March 18, 2013 and disability insurance benefits on April 18, 2013, alleging disability as of July 27, 2012 due to depression, anxiety, a heart defect, respiratory issues and obesity. After her application was denied at the initial administrative level, she requested a hearing before an administrative law judge ("ALJ"). Following a hearing on February 19, 2015, the ALJ issued a written decision on June 15, 2015, denying her applications. Luking's request for review by the Appeals Council was denied. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Luking's Statement of Facts (Doc. No. 23 at 2-10), which have been admitted by the Commissioner (Doc. No. 26-1). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The severity of mental disorders is determined by rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the "paragraph B criteria"). § 404.1520a(c)(3). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

3

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV. Decision of the ALJ

The ALJ found Luking had the severe impairments of asthma, bipolar disorder, depression, obesity and hearing loss, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ found Luking's mental impairments did not satisfy the "paragraph B" criteria because she had only moderate restrictions in activities of daily living; mild difficulties in social functioning; no difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation (Tr. 18-19). The ALJ also found the evidence of record failed to establish the presence of the "paragraph C" criteria[1] (Tr. 19).

After considering the entire record, the ALJ determined that Luking had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: lift or carry twenty pounds occasionally, ten pounds frequently; sit, stand or walk for six hours out of an eight-hour workday; avoid concentrated exposure to dust, fumes, gases, or other pulmonary irritants, extreme heat or vibration, and loud environment without hearing protection; occasional contact with the general public, co-workers and supervisors.

The ALJ found Luking unable to perform her past relevant work as a cashier, personal care aide, and fast food worker, but that there were jobs that exist in significant numbers in the national economy that she can perform, such as bench assembler, prep production worker,

---

[1] A claimant can satisfy the paragraph C criteria by showing: (1) extended episodes of decompensation; (2) a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or (3) a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). The paragraph C criteria are assessed only if the paragraph B criteria are not satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); see also 20 C.F.R. 404.1520a (detailing evaluation of mental impairments).

5

maid/laundry worker, and hand packager. Thus, the ALJ found Luking was not disabled as defined by the Act.

## V. Discussion

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011). It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). The only issue raised by Luking in her appeal of the Commissioner's decision is whether the ALJ failed to properly consider her credibility in determining her RFC (Doc. No. 23 at 11-13). Notably, Luking does not challenge the ALJ's consideration of the medical treatment records or evaluation of the medical opinion evidence.

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Id. (citing Hall v. Chater, 62 F.3d 220, 223

6

(8th Cir. 1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ identified a number of reasons for finding Luking's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible. First, there was no correlation to a significant medical event on the alleged onset date other than her self-report that she was having increasing difficulty with breathing and back pain (Tr. 21, 45). There was also evidence that Luking had stopped working for reasons unrelated to her alleged disabilities. She testified she "was let go because of circumstances with babysitting or not having a babysitter for [her] daughter for the summer." (Tr. 40, 456). The ALJ properly considered the fact that Luking stopped working for reasons other than her alleged disability when assessing her credibility. See Eichelberger v. Barnhart, 390 F. 3d 584, 590 (8th Cir. 2004) (ALJ properly discounted claimant's complaints noting that she had ceased employment at the same time she became the primary caregiver to her grandchild); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Brooks v. Colvin, No. 2:14CV108 ACL, 2016 WL 931192, at *5 (E.D. Mo. Mar. 11, 2016) (claimant stopped working because his employer's plant shut down).

The ALJ also noted Luking's failure to comply with medical treatment recommendations for tinnitus management, exercise and weight loss, as well as her failure to use her CPAP machine on a consistent basis. (Tr. 16, 21-22, 1010, 1016-17, 1032, 1114, 1155, 1158, 1215). An ALJ may properly consider a claimant's noncompliance with a treating physician's directions in

his credibility analysis. See Julin v. Colvin, 826 F.3d 1082, 1087 (8th Cir. 2016) (claimant's resistance to suggested courses of treatment weighed against her credibility); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008) (adverse credibility finding supported by claimant's failure to attend recommended therapy appointments); Baker v. Barnhart, 457 F.3d 882, 893–94 & n. 7 (8th Cir. 2006) (claimant's decision not to undertake recommended physical therapy was valid factor in credibility determination); Choate, 457 F.3d at 872 (noncompliance with a physician's directions or prescribed treatment is a valid reason to discredit a claimant's subjective allegations); 20 C.F.R. § 404.1530(a-b) (failure to follow a prescribed course of treatment without good reason precludes a finding of disability). The ALJ nevertheless accounted for Luking's hearing impairment and the effects of obesity in the RFC by restricting her exposure to a loud environment without hearing protection and by limiting her to a reduced range of light work. (Tr. 19, 21-23).

The ALJ's credibility finding is further supported by the record evidence that with treatment, Luking's symptoms of depression, back pain, and gastritis improved. (Tr. 16, 21-22, 412, 441, 453, 1055, 1048, 1058, 1229). "Evidence of effective medication resulting in relief may diminish the credibility of a claimant's complaints." Guilliams v. Barnhart, 393 F. 3d 798, 802 (8th Cir. 2005); see also Julin, 826 F.3d at 1087.

With regard to her back pain, the ALJ noted Luking's testimony that she took no pain medications other than Tylenol and had not tried a TENS unit.[2] Further, no doctor had recommended surgery or placed any restrictions on Luking's activities during the course of treatment (Tr. 20, 47-48); her medical providers repeatedly recorded a normal gait and station during the course of treatment (Tr. 22, 50, 388, 412, 948, 1026, 1096, 1099, 1109, 1123, 1136,

---

[2] A TENS unit sends an electrical current through the skin for pain control. The unit is usually connected to the skin using two or more electrodes. www.tensunits.com (last visited Sept. 18, 2017).

1163, 1231, 1264, 1276). Luking argues there is no medical evidence in the record suggesting that a TENS unit, pain medications, or surgery would alleviate her symptoms and/or was appropriate treatment in her case (Doc. No. 23 at 12). The fact that she has not availed herself of any alternative pain treatment modalities, however, indicates that she has received only conservative care for her back pain. See, Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (claimant's numerous visits to doctors, injections, and use of TENS unit, among other treatment modalities, supported her allegations of disabling pain); Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) (claimant's allegations of disabling pain may be discredited by evidence that he has received minimal medical treatment and/or has taken only occasional pain medications); Barrett v. Shalala, 38 F.3d 1019, 1023-24 (8th Cir. 1994) (allegations of a disabling impairment may be properly discounted because of inconsistencies such as minimal or conservative medical treatment).

The ALJ assessed moderate restriction in Luking's activities of daily living after acknowledging that she experienced weakness in her legs and problems breathing during the day, that she napped, and that she needed reminders to take care of her personal needs. (Tr. 18, 272-74, 277). However, the ALJ also considered Luking's statements that she cared for her then 9-year old daughter, prepared simple meals, used public transportation, went out alone, shopped for groceries and necessities two to three times per month, and tried to walk every day and clean her house (Tr. 18, 21, 37, 60, 272-75). Luking argues that engaging in these types of activities is not inconsistent with her subjective complaints and provides little to no support for a finding that she can perform full-time competitive work (Doc. No. 12 at 12). To be sure, "the ability to do activities such as light housework and visiting with friends" alone are insufficient reason to discredit Luking's subjective complaints. Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015)

(collecting cases). However, in this case, the extent of Luking's activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility." Chaney v. Colvin, 812 F.3d 672, 677 (8th Cir. 2016); see also Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (claimant's daily activities of caring for son and frequently-ill girlfriend, housecleaning, doing some yard work, occasionally playing sports, and socializing and playing games with friends or family members detracted from credibility).

Luking argues the ALJ failed to account for side effects from her medication, namely that her medications caused "a lot of sleepiness." Although the ALJ did not discuss Luking's alleged sleepiness as a side effect, the medical record does not indicate that she complained of this side effect to her physicians. In fact, the ALJ specifically noted a January 2013 visit during which Luking reported no side effects from medications and displayed normal attention and concentration on mental status examination (Tr. 21, 412). Thus, the ALJ did not err in failing to discuss Luking's sleepiness as a medication side effect. Christopher-Dell v. Colvin, No. 4:13CV954 ACL, 2014 WL 4840692, at *10 (E.D. Mo. Sept. 29, 2014).

In sum, the ALJ discussed many of the Polaski factors in discounting Luking's credibility. Because the ALJ's credibility findings are supported by good reasons and substantial evidence, the Court will defer to those findings. Nicholson v. Berryhill, No. 16-4180, 2017 WL 3568200, at *1 (8th Cir. Aug. 18, 2017) (citing Mabry v. Colvin, 815 F.3d 386, 389 (8th Cir. 2016)).

As noted above, Luking does not challenge the ALJ's consideration of the medical treatment records or evaluation of the medical opinion evidence. Nevertheless, upon review, the

Court finds the ALJ considered a detailed medical record, psychological and neurological consultative evaluations performed at the ALJ's request, and the opinion of a state agency psychological consultant. The ALJ also relied on the testimony of a vocational expert to find Luking capable of jobs existing in significant numbers in the national economy (Tr. 19-25, 66-68). See Milam, 794 F.3d at 985-86 (noting that testimony from a vocational expert based upon a properly phrased hypothetical question constitutes substantial evidence supporting the ALJ's decision). Accordingly, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole.

### VI. Conclusion

For these reasons, the Court finds there is substantial evidence on the record as a whole to support the ALJ's determination, and, therefore, the Commissioner's decision denying benefits should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.


Dated this 25th day of September, 2017.

                                                                                             _/s/ John A. Ross_
                                                                                             **JOHN A. ROSS**
                                                                                             **UNITED STATES DISTRICT JUDGE**